UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:21-CR-00447-SEP ) |
| REBECCA HANKS, | ) ) |
| Defendant. | ) ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Rebecca HANKS, represented by defense counsel Joel Schwartz, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)( B), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts One and Seven of the Indictment, the government agrees to move for the dismissal as to the defendant of Counts Two and Three at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be brought

in this District relative to the defendant's unlawful distribution of controlled substances and firearms possession, as reflected in both the Indictment and this Agreement, of which the Government is currently aware.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea.  **The parties further agree to jointly recommend a sentence of 12 months and 1 day in prison at the time of sentencing.**  The parties understand that the Court is neither a party to nor bound by this joint recommendation or the Guidelines recommendations agreed to in this document.

The defendant also agrees, pursuant to the guilty plea to Counts One and Seven, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to:

  a. 2016 Dodge Charger, VIN: 2C3CDXL92GH179995;
  b. S&W .38 caliber pistol, SN# CZL8607;
  c. Hi-Point, Mod JCP, .40 caliber pistol, SN# X7287936;
  d. Glock 48, 9x19 pistol, SN# BSBM701;
  e. Remington 12 gauge shotgun, SN# 106257;
  f. Taurus Ultra Lite .38 Special pistol, SN# ABJ892365;
  g. Sako Rifle, Model A57, 30-06 caliber, SN# A57115;
  h. Taurus Rosi 243 Rifle, SN# 171745;
  i. Approximately $4,359 U.S. Currency; and
  j. Miscellaneous Magazines and Ammunition.

### 3.  ELEMENTS:

As to Count One, the defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1) and 846 and admits there is a factual basis for the plea, and further, fully understands that the elements of the crime are as follows:

Beginning on an unknown date and continuing for a period of time, up to and including January 28, 2021, with the exact dates unknown, within the Eastern District of Missouri and elsewhere,

> **(i)** two or more persons reached an agreement or came to an understanding to distribute and possess with the intent to distribute a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance;
>
> **(ii)** the Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and
>
> **(iii)** at the time the Defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding.

As to Count Seven, the defendant admits to knowingly violating Title 21, United States Code, Section 856(A)(1) and admits there is a factual basis for the plea, and further, fully understands that the elements of the crime are as follows:

Between on or about November 1, 2020 and January 28, 2021, within the Eastern District of Missouri,

> **(i)** The defendant knowingly maintained a place located at 71 Chantilly Acres, Winfield, Missouri, 63389; and

    **(ii)**    the Defendant did so for the purpose of manufacturing, distributing, or using a controlled substance.

**4.  FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial.  These facts may be considered as relevant conduct pursuant to Section 1B1.3:

In late 2020, early 2021, investigators with the Drug Enforcement Administration (DEA) became aware of a group of individuals illegally distributing marijuana from a residence in Lincoln County, Missouri, within the Eastern District of Missouri. Specifically, the residence located at 71 Chantilly Acres, Winfield, Missouri, 63389.  These individuals were identified as Defendant Rebecca HANKS, as well as her co-defendants Richard Frazier, Amelia Siebert, and Zachary Siebert.  Local law enforcement received numerous and repeated complaints from neighbors concerning the regular traffic and nuisance that the drug sales were causing to the neighborhood. This included a constant stream of individuals stopping by the residence for brief periods of time to conduct drug sales.

In late January 2021, investigators stopped a customer as he/she was leaving the residence (hereinafter referred to as "CS").  Upon being interviewed, CS provided information with respect to Defendant and her co-defendant's operation.  Investigators learned that Defendant and/or one or more of her co-defendants would make regular trips to the Denver, Colorado area in order to purchase large quantities of marijuana and/or THC products, including THC edibles, for redistribution out of the residence at Chantilly Acres.

Upon conducting a controlled purchase from the home, investigators obtained a federal search warrant for the residence. Investigators executed the search warrant on January 28, 2021. Defendant and all three co-defendants were present at the time of execution and were taken into custody as investigators searched the residence. Investigators located large quantities of THC edibles (including Stoney Patch candy packages), cannabis plants, THC wax, and various other forms of THC products. Moreover, investigators discovered various firearms in the residence. However, investigators learned that these firearms belonged to co-defendant Richard Frazier and were not possessed by Defendant Rebecca Hanks. The parties agree that Defendant's agreement to forfeit any property interest to these firearms, as reflected in this Agreement, is not an admission on Defendant's part to owning or possessing these firearms at the time of their seizure.

Defendant was interviewed at the residence after acknowledging and waiving her *Miranda* rights. During the interview, she made statements admitting to the above facts, including that she utilized the residence for the purpose of distributing marijuana and THC products.

The parties agree that Defendant and her co-Defendants were exclusively selling marijuana and/or various THC products from the residence. The parties further agree that the edibles seized from the residence (the THC candy) resulted in a much larger "quantity" of THC being attributable to Defendant due to the weight of the edibles, and that the majority of this weight is thus attributable to a non-THC edible substance. These seized substances were sent to the Missouri State Highway Patrol Crime Laboratory Division for testing and analysis. This testing revealed positive tests for various THC products, including the edible substances. Based on this laboratory report, the parties agree that the quantity of THC attributable to Defendant, as a result of her own conduct and the conduct of her co-conspirators reasonably foreseeable to her, is approximately

9,317 grams, the substantial majority of which is attributable to the edible candy products. This equates to a converted drug weight of 1,555 kilograms.  The parties agree that expert testimony, in the event of a trial, would demonstrate that this quantity is inconsistent with a quantity solely intended for distribution, and was intended for distribution.

**5.  STATUTORY PENALTIES:**

    **Count One**:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $1,000,000, or both such imprisonment and fine.  The Court shall also impose a period of supervised release of not less than 3 years.

    **Count Seven**:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $500,000, or both such imprisonment and fine.  The Court may also impose a period of supervised release of not more than 3 years.

**6.  U.S. SENTENCING GUIDELINES:  2021 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.  The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:**

**Count One**: The parties agree that the base offense level is 30, as found in Section 2D1.1(c)(5). The parties agree that the quantity of converted drug weight for which the defendant is accountable, including relevant conduct, is more than 1,000 kilograms, and less than 3,000 kilograms, resulting in the agreed Base Offense Level.

**Count Seven**: The parties agree that the base offense level is 30, as found in Section 2D1.8(a)(1).

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

**Count One**: Pursuant to 2D1.1(b)(12), 2 levels are added because the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance.

**Count Seven**: None.

**b. Chapter 3 Adjustments:**

**(1) Acceptance of Responsibility:** The parties agree that 3 levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the

court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2)   Other Adjustments:**   The parties agree that the following additional adjustments apply:   None.

**c.  Other Adjustment(s) and Disputed Adjustments:**   None.

**d.   Estimated Total Offense Level:**   For Count One, the parties estimate that the Total Offense Level is 29, unless defendant is a Career Offender.  Depending on the underlying offense and defendant's criminal history, defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI.  Defendant has discussed these possibilities with defense counsel.  Both parties reserve the right to argue that the defendant is or is not a Career Offender.

**e.  Criminal History:**  The determination of the defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.  The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f.  Effect of Parties' U.S. Sentencing Guidelines Analysis:**  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7.  WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

  **a.  Appeal:**  The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

    **(1)  Non-Sentencing Issues:**  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

    **(2)  Sentencing Issues:**  In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

  **b.  Habeas Corpus:**  The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

  **c.  Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records

pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.  OTHER:**

    **a.  Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    **b.  Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    **c.  Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.  These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

    **d.  Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total

of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e.  Possibility of Detention:**  The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f.  Fines, Restitution and Costs of Incarceration and Supervision:**  The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon [his/her] interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following:

   a. 2016 Dodge Charger, VIN: 2C3CDXL92GH179995;
   b. S&W .38 caliber pistol, SN# CZL8607;
   c. Hi-Point, Mod JCP, .40 caliber pistol, SN# X7287936;

      d.      Glock 48, 9x19 pistol, SN# BSBM701;
      e.      Remington 12 gauge shotgun, SN# 106257;
      f.      Taurus Ultra Lite .38 Special pistol, SN# ABJ892365;
      g.      Sako Rifle, Model A57, 30-06 caliber, SN# A57115;
      h.      Taurus Rosi 243 Rifle, SN# 171745;
      i.      Approximately $4,359 U.S. Currency; and
      j.      Miscellaneous Magazines and Ammunition.

The defendant consents that the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

### 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance

of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10.  VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in

this case.  In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea.  The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11.  CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement.  The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

08/18/2022
Date

GEOFFREY S. OGDEN
Assistant United States Attorney

10-3-22
Date

REBECCA HANKS
Defendant

10/3/22
Date

JOEL SCHWARTZ
Attorney for Defendant

Nathan T. Swanson

Page 15 of 15